# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**JOHNSON BROS. CORP.,**

**Plaintiff,**

**v.**                                                   **Case No. 6:21-cv-200-JA-EJK**

**WSP USA, INC. and CDM
SMITH, INC.,**

**Defendants.**

---

## ORDER

This case is before the Court on Defendants' *Daubert*[1] motions (Docs. 137 & 138), Plaintiff's responses (Docs. 150 & 151), and Defendants' replies (Docs. 166 & 168). Having reviewed the parties' submissions, the Court will grant the motions in part and deny them in part.

## I.   BACKGROUND

This dispute stems from problems encountered during the design and construction of the Veterans Memorial Bridge in Volusia County, Florida. (Doc. 140 ¶ 1; Doc. 143 ¶ 1; Doc. 153 at 2). In February 2013, the County contracted with Defendant WSP USA, Inc. for design and engineering services on the bridge project. (Doc. 76-1 at 39; Doc. 140 ¶ 3; Doc. 143 ¶ 3; Doc. 153 at 2). Three

---

[1] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

years later, in February 2016, the County entered into a contract with Plaintiff whereby Plaintiff became the general contractor for construction of the bridge. (Doc. 76-3 at 64; Doc. 140 ¶ 4; Doc. 143 ¶ 2; Doc. 153 at 5). Shortly thereafter, in March 2016, the County contracted with Defendant CDM Smith, Inc. for Construction, Engineering, and Inspection (CEI) services on the project. (Doc. 76-2 at 34; Doc. 140 ¶ 5; Doc. 143 ¶ 7; Doc. 153 at 3).

Whenever Plaintiff encountered a problem during the project that affected Plaintiff's work to the point that Plaintiff wanted reimbursement from the County, Plaintiff submitted an official Notice of Intent to File Claim (NOI) to the County regarding the problem. (*See, e.g.*, Doc. 76-4 at 2). Over the course of the project, Plaintiff submitted multiple NOIs. (Doc. 76 ¶ 23; Doc. 140 ¶ 7; Doc. 143 ¶¶ 13–15; *see* Doc. 153 at 9).

Initially in this lawsuit, Plaintiff sued only the County, (*see* Docs. 1, 9, 13, 36, & 70), alleging that the County "rejected or failed to respond to" claims raised in various NOIs, (Doc. 13 ¶¶ 10–11; Doc. 36 ¶¶ 10–11; Doc. 70 ¶¶ 10–11). The County filed a third-party complaint against WSP for indemnification, breach of contract, and negligence. (*See* Doc. 45). Eventually, Plaintiff settled with the County, and under the settlement agreement, the County assigned to Plaintiff rights to sue WSP and CDM for damages related to the project. (Doc. 76-49 §§ 2.1, 8.1). Accordingly, Plaintiff now sues Defendants both in its own right and as the County's assignee. (*See, e.g.*, Doc. 76 ¶¶ 32, 36, 45).

Plaintiff asserts claims in connection with sixteen NOIs: twelve against both Defendants (NOIs 3, 13, 18, 20, 21, 26, 35, 38, 41, 44, 45, and 46), two against WSP only (NOIs 28 and 33), and two against CDM only (NOIs 8 and 47). (*See id.* ¶¶ 28, 32–680). For each NOI, Plaintiff brings breach-of-contract and contractual-indemnification claims as the County's assignee and a negligence claim in its own right under Florida common law. (*See id.* ¶ 26; *see, e.g.*, *id.* ¶¶ 32–55 (the three counts against WSP related to NOI 3)). As the County's assignee, Plaintiff also asserts general-indemnification claims against both Defendants. (*Id.* ¶¶ 681–706).

Of the sixteen NOIs, eleven are potentially relevant in resolving the *Daubert* motions. (*See* Doc. 138 at 20–21). NOI 3 involves jetting, (Doc. 76 ¶ 23a)—a method of installing piles (support structures for bridges) that uses pressurized jets of water to loosen soil, (Doc. 137-4 at 4–5). NOI 8 involves broken piling. (Doc. 76 ¶ 23b). NOIs 13 and 18 involve repair of the cracking in Piers 7 and 8, respectively. (*Id.* ¶ 23c–d). NOI 20 involves delays related to the erection plan. (*Id.* ¶ 23e). NOI 26 involves pier-cap constructability. (*Id.* ¶ 23g). NOI 28 involves Hanger-Rod constructability. (*Id.* ¶ 23h). NOI 33 involves the design of the Span 5 Bar Splice. (*Id.* ¶ 23i). NOI 35 involves the design of the fishing piers. (*Id.* ¶ 23j). NOI 38 involves cracking in the latex-modified overlay. (*Id.* ¶ 23k). And NOI 44 involves extra work and delay due to cracking in Piers 11 and 4. (*Id.* ¶ 23m).

To support its claims, Plaintiff retained five experts: Mr. Edwin Mackiewicz, Mr. William Nickas, Mr. John Miseroy, Dr. Randall Poston, and Mr. Peter Wade. (*See* Doc. 150 at 2–3, 12–13). Defendants now move to exclude some of the opinions of these five experts. (*See* Docs. 137 & 138).

## II.   LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert opinions and "compels" the Court "to perform [a] critical 'gatekeeping' function." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 n.7, 597 (1993)); *see* Fed. R. Evid. 702 ("A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."). To decide the admissibility of an expert's opinions, the Court "engage[s] in a rigorous three-part inquiry" and considers (1) whether the expert is qualified to provide the opinions, (2) whether "the methodology by which the expert reache[d the opinions] is sufficiently reliable," and (3) whether in providing the opinions, the expert will help the factfinder "understand the evidence or . . . determine a fact

in issue." *Frazier*, 387 F.3d at 1260 (quoting *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)). "The party offering the expert has the burden of" establishing the expert's qualifications, the methodology's reliability, and the opinions' helpfulness to the factfinder "by a preponderance of the evidence." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1292 (11th Cir. 2005).

## III.   DISCUSSION

The Court discusses Mr. Mackiewicz, Mr. Nickas, Mr. Miseroy, Dr. Poston, and Mr. Wade in turn.

### A.   Mr. Mackiewicz

Plaintiff retained Mr. Mackiewicz to opine on whether CDM breached the standard of care for CEI services. (Doc. 137 at 3; Doc. 150 at 5). Mr. Mackiewicz wrote in his expert report, (Doc. 137-2 at 8–9), and testified in his deposition, (Doc. 137-1 at 12), that CDM not only failed to meet the standard of care but also acted in bad faith. When asked during his deposition whether he had any "special training or knowledge" on which to base his bad-faith determination, Mr. Mackiewicz stated that he did not know if he did but that "through [his] experience," CDM's conduct did not constitute "good[-]faith dealing." (*Id.*). Mr. Mackiewicz was also asked about the basis for his opinions on CDM's responsibilities regarding the project, and he responded that CDM's responsibilities went beyond the express obligations in its contract with the County because the responsibilities were owed to the project and were for the

benefit of stakeholders besides the County. (*Id.* at 6–8). He explained that his statements about CDM's responsibilities were "not a legal opinion" but were "based on [his] experience . . . in the CEI world." (*Id.* at 7).

CDM argues that Mr. Mackiewicz's opinions on its subjective bad faith should be excluded because he is not qualified to offer psychological opinions, he does not have special training in bad faith, and anyway, "the subject of a person's state of mind is off-limits to expert testimony." (Doc. 137 at 4–5). CDM further maintains that his statements on the scope of its responsibilities should be excluded because he is not qualified to opine on legal issues and because the Court is better suited than he is to interpret CDM's contract with the County and to instruct the factfinder on CDM's legal duties. (*Id.* at 5–7; Doc. 166 at 8–9). As to bad faith, Plaintiff responds: "Mr. Mackiewicz is not offering any opinions on CDM's state of mind[,] its corporate ethics[,] and whether CDM met certain legal thresholds" but is instead "opining on the customs and practices in the CEI industry and how CDM failed to comply with those customs and practices giving rise to bad faith." (Doc. 150 at 6). As to the scope of CDM's responsibilities, Plaintiff contends that Mr. Mackiewicz will refer to CDM's contract and scope of work "for contextual purposes only" and will testify that "in furnishing [CEI] services, CDM should have acted in a way to benefit the [p]roject as a whole—as is the custom and practice—and not solely and exclusively for the benefit" of the County. (*Id.* at 7–8).

State-of-mind and legal opinions are generally improper. *See Romano v. John Hancock Life Ins. Co. (USA)*, No. 19-21147-CIV, 2022 U.S. Dist. LEXIS 83703, at *13–14 (S.D. Fla. May 9, 2022). Accordingly, although Mr. Mackiewicz will be permitted to opine on CEI customs and practices, he will not be permitted to opine on CDM's bad faith or legal duties. *See id.*

### B.   Mr. Nickas

Plaintiff retained Mr. Nickas primarily to opine on pile-installation methods, particularly the jetting method. (*See* Doc. 137-3 at 3, 7; Doc. 137-4 at 1, 4–5). Mr. Nickas testified in his deposition that he considers himself an expert in bridge engineering and construction, not the day-to-day work of construction inspection. (Doc. 137-3 at 31–32). In his report, Mr. Nickas concluded that WSP deviated from the standard of care for bridge engineering because WSP created confusion about whether jetting would be allowed during the project, (Doc. 137-4 at 27), and he faulted CDM for failing to suggest that WSP revise the project plans for clarity on this issue, (*id.* at 28). Focusing on a plan note stating, "When a required jetting or preformed elevation is not shown on the table, the contractor shall coordinate with the engineer of record to obtain written approval prior to jetting or preforming pile locations," Mr. Nickas took issue with the vagueness of the verb "coordinate" and opined that WSP should have specified the requirements imposed by the note and should have been explicit about prohibiting jetting with language like "do not jet" if jetting was to be

7

prohibited. (*Id.* at 11, 27). Mr. Nickas further opined that CDM was "supposed to be the go[-]between and honest broker with all parties involved with the project," (*id.* at 33–34); was supposed to "remain impartial and non[-]bias[ed]" regarding "the totality of the [plans, specifications, and estimates] package," (*id.* at 28); "should have been forthright" and alerted the County to problems arising from discrepancies in the plans and specifications, (*id.* at 42–43); and "could have encouraged" the County—"[f]rom the onset of the project"—"to engage an independent panel" as a Dispute Review Board (DRB), (*id.* at 49). Mr. Nickas stated that a DRB would have advised the County of inconsistencies that CDM failed to bring to the County's attention. (*Id.* at 43).

CDM makes four arguments as to Mr. Nickas: (1) he is not qualified to opine on the CEI standard of care because he has minimal experience specific to CEI services, (2) his statements about CDM's being an "honest broker" and "impartial and non[-]bias[ed]" are pure opinion, (3) his statement that a DRB would have advised the County of inconsistencies is pure speculation, and (4) his standard-of-care testimony is cumulative given Mr. Mackiewicz's testimony. (Doc. 137 at 7–10; Doc. 166 at 9–10). And WSP maintains that Mr. Nickas's jetting opinions related to NOI 3 should be excluded as unreliable and unhelpful because Mr. Nickas focused too closely on the "coordinate" note and did not consider WSP's overall performance on the project and because his "conclusion . . . converts the standard of care [required of a design professional

like WSP] to a near strict liability standard." (Doc. 138 at 14–18). In its responses, Plaintiff addresses all these arguments except CDM's speculation argument. (*See* Doc. 150 at 9–15; Doc. 151 at 15–17).

As to the issue of qualifications, Mr. Nickas is qualified to testify to the CEI standard of care. "A witness is qualified as an expert if he is the type of person who should be testifying on the matter at hand." *Moore v. Intuitive Surgical, Inc.*, 995 F.3d 839, 852 (11th Cir. 2021) (emphasis omitted). A witness may be qualified "by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Mr. Nickas holds a Bachelor of Science degree in Civil Engineering from The Citadel Military College of South Carolina and has worked for four decades in positions related to "the design and construction of transportation facilities," including complex bridges in Florida. (Doc. 137-4 at 53). Although he has minimal experience specific to CEI services, the CEI subfield sufficiently overlaps with the areas of civil engineering in which he has education and experience that he is qualified to opine on CEI services. *See Hendrix v. Evenflo Co.*, 255 F.R.D. 568, 578 (N.D. Fla. 2009) ("[S]o long as [an] expert is at least minimally qualified, gaps in his qualifications generally will not preclude admission of his testimony, as [they] relate[] more to witness credibility and thus the weight of the expert's testimony[] than to its admissibility.").

As to Mr. Nickas's "honest broker" and "impartial and non[-]bias[ed]" statements, Mr. Nickas will be permitted to opine on CEI customs and practices,

including the purported expectation that a CEI act as an impartial honest broker on a project. But Mr. Nickas will not be permitted to opine that CDM failed to act in accordance with this expectation. In other words, Mr. Nickas may not say that CDM was not an impartial honest broker for the bridge project. *See Romano*, 2022 U.S. Dist. LEXIS 83703, at *13–14.

As to the statement that a DRB would have advised the County of inconsistencies that CDM failed to bring to the County's attention, Mr. Nickas admitted during his deposition that the statement was "just speculation." (Doc. 137-3 at 38). And Plaintiff does not address the statement or CDM's speculation argument in its response to CDM. (*See* Doc. 150 at 9–15). As the party offering Mr. Nickas as an expert, Plaintiff bears the burden of establishing that his statement has an appropriate basis. *See Rink*, 400 F.3d at 1292. Because the statement appears to be based on speculation, it will be excluded. *See Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010) ("*Daubert* requires that trial courts act as 'gatekeepers' to ensure that speculative, unreliable expert testimony does not reach the jury.").

As to the issue of cumulativeness, Mr. Nickas's anticipated testimony on the CEI standard of care is not necessarily cumulative to Mr. Mackiewicz's for two reasons. First, the two witnesses have "different professional perspectives." *See Royal Bahamian Ass'n v. QBE Ins. Corp.*, No. 10-21511-CIV-MORE, 2010 U.S. Dist. LEXIS 115308, at *5 (S.D. Fla. Oct. 21, 2010) ("Testimony on the same

topic by different experts . . . is not needlessly cumulative where the experts will testify from different professional perspectives."). Mr. Nickas has a general-engineering perspective, (*see* Doc. 137-4 at 53), and Mr. Mackiewicz has a perspective specific to CEI, (*see* Doc. 137-1 at 5). (*See also* Doc. 150 at 13). And second, Mr. Nickas will offer jetting-centric testimony while Mr. Mackiewicz will discuss not only jetting but also a range of other issues. Accordingly, Mr. Nickas will be allowed to testify to the CEI standard of care.[2]

As to the reliability and helpfulness of Mr. Nickas's opinions, the Court agrees with Plaintiff that his method of "investigating a single note on a drawing and then opining about the standard of care with respect to the formulation of that note" is not inherently unreliable, (Doc. 151 at 15), given his overview of WSP's work, (*see* Doc. 137-3 at 29 (explaining that WSP "went above and beyond" in various other ways during the project)), and that his standard-of-care testimony is more likely to assist than confuse the factfinder, (Doc. 151 at 17), who will receive instructions on legal standards from the Court. In general, WSP's arguments about Mr. Nickas are more appropriate for a trial than for a motion to exclude. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof

---

[2] The Court disagrees with CDM's assessment that Mr. Nickas is "(mis)stepping into the proverbial shoes of a CEI to form" his opinions. (Doc. 166 at 11). To borrow CDM's phrase, Mr. Nickas is wearing general-engineering shoes, not CEI shoes.

11

are the traditional and appropriate means of attacking shaky but admissible evidence.").

### C.   Mr. Miseroy

Plaintiff retained Mr. Miseroy to provide opinions related to NOIs 3, 20, 26, and 35, including standard-of-care opinions as to CDM and WSP. (*See* Doc. 137-7 at 2; Doc. 150 at 16; Doc. 151 at 14). In his report, Mr. Miseroy commented that when Plaintiff asked for help solving a problem with pier-cap constructability, CDM did not provide assistance, (Doc. 137-7 at 35), and when Plaintiff identified a problem with the design of the fishing piers, CDM required Plaintiff "to perform significant extra work to produce" the "design illustrated in the plans," (*id.* at 36 (emphasis omitted)). Mr. Miseroy stated that Virgil Rook, CDM's Senior Project Engineer on the project, "did not grasp the extra work" that Plaintiff "was required to perform." (*Id.* at 54 (emphasis omitted)). In his deposition, Mr. Miseroy testified that he did not examine the scope of work required of CDM by its contract with the County. (Doc. 137-5 at 32). He based his CEI opinions, he said, on "what other CEI firms have done on projects" in which he participated "over the years" and on "how issues were escalated or not" during the Veterans Memorial Bridge project. (*Id.*). And he testified that like a DRB, a CEI firm should provide advice to "help [a] project avoid disputes and delays." (*Id.* at 33).

Both Defendants challenge Mr. Miseroy's qualifications to offer standard-

of-care testimony because he has never worked in CEI and is not a professional engineer in Florida. (Doc. 137 at 10–11; Doc. 138 at 13–14; Doc. 166 at 10). Additionally, CDM contends that his opinions should be excluded because he does not base them "on solid ground" and because they are duplicative of Mr. Mackiewicz's standard-of-care opinions. (Doc. 137 at 11–12; *accord* Doc. 166 at 10–11). Plaintiff responds that "Mr. Miseroy is a highly qualified marine contractor with extensive experience constructing bridges and piers," (Doc. 151 at 14), and that his opinions are "grounded on" industry customs and practices, (Doc. 150 at 17). Plaintiff also asserts that Mr. Miseroy's opinions are not needlessly duplicative of Mr. Mackiewicz's. (*Id.*).

The Court agrees with Plaintiff that Mr. Miseroy's professional experience qualifies him to opine on the relevant standards of care, informs his knowledge of the applicable customs and practices, and provides a sufficient basis for his opinions. *See* Fed. R. Evid. 702; *cf. Maiz v. Virani*, 253 F.3d 641, 668–69 (11th Cir. 2001) (rejecting the argument that an expert's testimony about "the passport-stamping practices of Mexican immigration authorities" was unreliable when the testimony was "based largely on [the expert's] personal experience"). However, the Court agrees with CDM that Mr. Miseroy's opinions as to CDM are duplicative of Mr. Mackiewicz's. Accordingly, Mr. Miseroy will be permitted to opine as to WSP but not as to CDM.

### D.    Dr. Poston

Plaintiff retained engineering expert Dr. Poston to opine on various NOIs. (*See, e.g.*, Doc. 159). Although CDM briefly argues that Dr. Poston's opinion on the CEI standard of care should be excluded as needlessly duplicative of Mr. Mackiewicz's opinions, (Doc. 137 at 12–13), most of the arguments to exclude Dr. Poston's opinions come from WSP, (Doc. 138 at 4–13). As to NOIs 26, 28, 33, and 35, WSP seeks to exclude Dr. Poston's testimony as unhelpful because he does not offer standard-of-care opinions about WSP's conduct. (Doc. 138 at 4–10). And as to NOIs 13, 18, and 44, WSP asserts that the only standard-of-care opinion offered by Dr. Poston relies on the unsupported assumption that "WSP had a contractual obligation to perform construction phase services" related to the pier cracking described in the NOIs. (*Id.* at 10–13). In response to WSP's arguments, Plaintiff submitted an affidavit from Dr. Poston in which he opines that WSP's conduct fell below the applicable standard of care as to all these NOIs except for NOI 28. (Doc. 159 at 2–5). Plaintiff represents that with respect to that NOI, Plaintiff "does not attribute any damages or delay" to WSP. (Doc. 151 at 6). But in general, says Plaintiff, Dr. Poston's opinions are helpful for the breach-of-contract and negligence claims and are reliable. (Doc. 151 at 4–14).

Regarding CDM's argument, Dr. Poston's opinions will not be excluded as duplicative of Mr. Mackiewicz's because the two experts offer "different professional perspectives." *See Royal Bahamian*, 2010 U.S. Dist. LEXIS 115308,

at *5. Regarding WSP's arguments, Dr. Poston's testimony related to NOI 28—and, indeed, all opinions about NOI 28—will be excluded as unhelpful given Plaintiff's representation that as to that NOI, Plaintiff "does not attribute any damages or delay" to WSP, (Doc. 151 at 6)—the only defendant for the NOI 28 claims, (*see* Doc. 76 at 91–97). *See Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1325 (11th Cir. 2012) (listing damages as an element of breach-of-contract and negligence claims under Florida law); *see also ACMG of La., Inc. v. Towers Perrin, Inc.*, 390 F. App'x 936, 938 (11th Cir. 2010) ("A claim for indemnity arises only when a party pays *damages* on behalf of another." (emphasis added)). That said, Dr. Poston's testimony is otherwise helpful in light of his standard-of-care opinions about WSP's conduct. And his testimony about NOIs 13, 18, and 44 is sufficiently reliable because the opinions on these NOIs are not based on an unsupported assumption about WSP's contractual obligations. Instead, they are based on WSP's overreactions in addressing ordinary shrinkage cracks ("a natural phenomenon in concrete construction") by "call[ing] for a detailed investigation" and "a repair and remediation protocol" and "suspend[ing] work on the project" pending the investigation. (Doc. 159 at 5).

### E.   Mr. Wade

Plaintiff retained Mr. Wade to calculate its damages, including its lost opportunity costs. (*See* Doc. 160-1 at 7). During his deposition, Mr. Wade testified that he used the Consolidated Financial Statements of Plaintiff's

parent company, Southland Holdings Companies—rather than Plaintiff's Consolidated Financial Statements—to calculate Plaintiff's lost opportunity costs. (Doc. 138-4 at 4). Defendants move to exclude Mr. Wade's opinions on Plaintiff's lost opportunity costs, arguing that he based his opinions on financial data unrelated to Plaintiff. (Doc. 137 at 13; Doc. 138 at 18–20). Plaintiff responds that Mr. Wade misspoke during his deposition and that he in fact used Plaintiff's, not its parent company's, financial data as the basis for his opinions. (Doc. 150 at 18–20; Doc. 151 at 17–18). Mr. Wade admits his mistake in an affidavit, (Doc. 160 ¶ 9), and has submitted an errata sheet correcting his testimony, (Doc. 169-4 at 2). The affidavit and errata sheet are consistent with his reports, which state that he used Plaintiff's data to calculate its lost opportunity costs. (*See* Doc. 170-9 at 48; Doc. 170-10 at 18). Although WSP moved to strike Mr. Wade's affidavit and errata sheet as contradicted by his prior deposition testimony, (Doc. 169 at 19–24), the Court denied the motion, (Doc. 203 at 2). Because Defendants' arguments about Mr. Wade's opinions are predicated on incorrect information about his process for calculating Plaintiff's lost opportunity costs, they are unpersuasive. Accordingly, Mr. Wade's opinions will not be excluded.

## IV.   CONCLUSION

For the reasons explained above, it is **ORDERED** that Defendants' *Daubert* motions (Docs. 137 & 138) are **GRANTED in part and DENIED in**

**part**. The Court excludes Mr. Mackiewicz's opinions about CDM's bad faith and legal duties, Mr. Nickas's opinion that CDM did not act as an impartial honest broker for the bridge project, Mr. Nickas's opinion that a DRB would have advised the County of inconsistencies that CDM failed to bring to the County's attention, Mr. Miseroy's opinions about CDM, and all opinions about NOI 28. The motions to exclude are otherwise **denied**.

The Court expects that **no more than two experts** will give opinion testimony as to each standard of care per NOI. The parties shall govern themselves accordingly in preparation for trial.

**DONE** and **ORDERED** in Orlando, Florida, on June 25, 2024.

_____
JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record