# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**JOHNSON BROS. CORP.,**

        **Plaintiff,**

v.                                    **Case No. 6:21-cv-200-JA-EJK**

**WSP USA, INC. and CDM
SMITH, INC.,**

        **Defendants.**

_____

## ORDER

This case is before the Court on Defendant WSP USA, Inc.'s motion for partial summary judgment (Doc. 142), Plaintiff's response (Doc. 153), and WSP's reply (Doc. 168). Having reviewed the parties' submissions, the Court will grant the motion in part and deny it in part.

## I.   BACKGROUND

This dispute stems from problems encountered during the design and construction of the Veterans Memorial Bridge in Volusia County, Florida. (Doc. 140 ¶ 1; Doc. 143 ¶ 1; Doc. 153 at 2). In February 2013, the County contracted with Defendant WSP USA, Inc. for design and engineering services on the bridge project. (Doc. 76-1 at 39; Doc. 140 ¶ 3; Doc. 143 ¶ 3; Doc. 153 at 2). Three years later, in February 2016, the County entered into a contract with Plaintiff whereby Plaintiff became the general contractor for construction of the bridge.

(Doc. 76-3 at 64; Doc. 140 ¶ 4; Doc. 143 ¶ 2; Doc. 153 at 5). Shortly thereafter, in March 2016, the County contracted with Defendant CDM Smith, Inc. for Construction, Engineering, and Inspection (CEI) services on the project. (Doc. 76-2 at 34; Doc. 140 ¶ 5; Doc. 143 ¶ 7; Doc. 153 at 3).

Whenever Plaintiff encountered a problem during the project that affected Plaintiff's work to the point that Plaintiff wanted reimbursement from the County, Plaintiff submitted an official Notice of Intent to File Claim (NOI) to the County regarding the problem. (*See, e.g.,* Doc. 76-4 at 2). Over the course of the project, Plaintiff submitted multiple NOIs. (Doc. 76 ¶ 23; Doc. 140 ¶ 7; Doc. 143 ¶¶ 13–15; *see* Doc. 153 at 9).

Initially in this lawsuit, Plaintiff sued only the County, (*see* Docs. 1, 9, 13, 36, & 70), alleging that the County "rejected or failed to respond to" claims raised in various NOIs, (Doc. 13 ¶¶ 10–11; Doc. 36 ¶¶ 10–11; Doc. 70 ¶¶ 10–11). The County filed a third-party complaint against WSP for indemnification, breach of contract, and negligence. (*See* Doc. 45). Eventually, Plaintiff settled with the County, and under the settlement agreement, the County assigned to Plaintiff rights to sue WSP and CDM for damages related to the project. (Doc. 76-49 §§ 2.1, 8.1). Accordingly, Plaintiff now sues Defendants both in its own right and as the County's assignee. (*See, e.g.,* Doc. 76 ¶¶ 32, 36, 45).

Plaintiff asserts claims in connection with sixteen NOIs: twelve against both Defendants (NOIs 3, 13, 18, 20, 21, 26, 35, 38, 41, 44, 45, and 46), two

against WSP only (NOIs 28 and 33), and two against CDM only (NOIs 8 and 47). (*See id.* ¶¶ 28, 32–680). Of the sixteen NOIs, eight are relevant in resolving the motion for partial summary judgment. (*See* Doc. 138 at 20–21). NOI 3 involves jetting, (Doc. 76 ¶ 23a)—a method of installing piles (support structures for bridges) that uses pressurized jets of water to loosen soil, (Doc. 137-4 at 4–5). NOIs 13, 18, and 44 involve repair of the cracking in Piers 4, 7, 8, and 11. (Doc. 76 ¶¶ 23c–d, 23m). NOI 26 involves pier-cap constructability. (*Id.* ¶ 23g). NOI 28 involves Hanger-Rod constructability. (*Id.* ¶ 23h). NOI 33 involves the design of the Span 5 Bar Splice. (*Id.* ¶ 23i). And NOI 35 involves the design of the fishing piers. (*Id.* ¶ 23j).

For each NOI, Plaintiff brings breach-of-contract and contractual-indemnification claims as the County's assignee and a negligence claim in its own right under Florida common law. (*See id.* ¶ 26; *see, e.g.*, *id.* ¶¶ 32–55 (the three counts against WSP related to NOI 3)). As the County's assignee, Plaintiff also asserts general-indemnification claims against both Defendants. (*Id.* ¶¶ 681–706). Among the damages that Plaintiff seeks are lost opportunity costs, which represent the investment loss that Plaintiff allegedly suffered when, instead of investing money "in its corporate business," it spent that money on the project because of delays, inefficiencies, and extra work caused by Defendants' conduct. (Doc. 170-9 at 48).

As pertinent here, Plaintiff supports its claims with affidavits from four

witnesses: lay witness Mr. James Charles (Doc. 154), engineering experts Mr. William Nickas (Doc. 158) and Dr. Randall Poston (Doc. 159), and damages expert Mr. Peter Wade (Doc. 160). Mr. Charles worked for Plaintiff as an assistant project manager for the bridge project and based on that experience describes the parties' conduct during the project. (Doc. 154 ¶¶ 6–40). Mr. Nickas opines that WSP fell below the standard of care for a professional engineer because WSP waited too long into the project to clarify that the jetting method of pile installation was to be prohibited—the problem discussed in NOI 3. (Doc. 158 ¶¶ 17–20). Dr. Poston opines that WSP fell below the engineering standard of care in how it prepared the plans for the project related to NOIs 26, 33, and 35 and in how it overreacted to the pier cracking discussed in NOIs 13, 18, and 44. (Doc. 159 ¶¶ 7–21). As Plaintiff's damages expert, Mr. Wade calculated Plaintiff's lost opportunity costs based on its return on assets. (Doc. 160 ¶¶ 9–15).[1]

## II.   LEGAL STANDARD

On a motion for partial summary judgment, a district court views "all facts and reasonable inferences in the light most favorable to the nonmoving party."

---

[1] Although Mr. Wade testified at his deposition that he used the financial data of Plaintiff's parent company—instead of Plaintiff's financial data—to calculate Plaintiff's lost opportunity costs, he has since clarified in an affidavit and an errata sheet that he misspoke during his deposition and that he in fact based his calculations on Plaintiff's financial data. (Doc. 160 ¶¶ 7–9; Doc. 170-12 at 2). WSP moved to strike Mr. Wade's affidavit and errata sheet as contradicted by his prior deposition testimony, (Doc. 169 at 19–24), and the Court denied the motion, (Doc. 203 at 2).

*Wesson v. Huntsman Corp.*, 206 F.3d 1150, 1152 (11th Cir. 2000). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "genuine" only if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id*. The movant "bears the initial responsibility of informing the district court of the basis for its motion" and "identifying those portions" of the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant demonstrates the absence of a genuine issue of material fact, "[t]he burden then shifts to the non[]moving party" to "present affirmative evidence to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). To satisfy its burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## III.   DISCUSSION

In its motion, WSP addresses standard-of-care, duty, and damages issues under the umbrella topic of standard-of-care evidence before turning to the topics of first costs and lost opportunity costs. (*See* Doc. 142). The Court

considers these topics in turn.

### A.    Standard-of-Care Evidence

WSP contends that Plaintiff's County-assigned claims entail the same standard of care as its negligence claims and that all claims related to NOIs 3, 13, 18, 26, 28, 33, 35, and 44 fail because none of Plaintiff's experts properly opine that WSP's conduct as to those NOIs failed to satisfy that standard of care. (Doc. 142 at 6–8, 10–21; *see* Doc. 153-1 § 7.3.5.4 (setting the standard of care relevant to the County-assigned claims)). WSP further maintains that regarding the negligence claims related to NOIs 13, 18, and 44, WSP did not owe Plaintiff a duty under Florida law, (Doc. 142 at 8–10), and regarding all claims related to NOI 28, Plaintiff cannot establish damages, (*id.* at 15–16). Plaintiff responds that its County-assigned claims do not depend on the same standard of care as its negligence claims because WSP agreed to a higher standard under WSP's contract with the County. (Doc. 153 at 12–16, 20). At any rate, Plaintiff argues that for all the claims at issue except those related to NOI 28, a factual dispute remains as to whether WSP fell below even the lower negligence standard of care. (*Id.* at 10–12, 16–25). As to NOI 28, Plaintiff represents that it "does not attribute any . . . damages to" the issue addressed in that NOI. (*Id.* at 17 n.5).

Given Plaintiff's representation about NOI 28, the Court will grant WSP summary judgment on the NOI 28 claims. *See Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1325 (11th Cir. 2012) (listing damages as an element of breach-of-contract

and negligence claims under Florida law); *see also ACMG of La., Inc. v. Towers Perrin, Inc.*, 390 F. App'x 936, 938 (11th Cir. 2010) ("A claim for indemnity arises only when a party pays *damages* on behalf of another." (emphasis added)).

Regarding the negligence claims related to NOIs 13, 18, and 44, the Court agrees with WSP that WSP did not owe Plaintiff a duty in tort under Florida law. (*See* Doc. 142 at 8–10). In *A. R. Moyer, Inc. v. Graham*, 285 So. 2d 397 (Fla. 1973), a general contractor sued a supervising architect alleging that the architect's negligence during a construction project caused the general contractor damages. *See id.* at 398. The general contractor did not have a contract with the architect. *See id.* The Florida Supreme Court stated the rule that "a third[-]party general contractor, who may foreseeably be injured or sustain[] an economic loss proximately caused by the negligent performance of a contractual duty of an architect [or engineer], has a cause of action against the alleged[ly] negligent architect [or engineer], notwithstanding [an] absence of [contractual] privity." *Id.* at 402. However, Florida courts apply this rule only when the architect or engineer has supervisory duties for the project. *See Grace & Naeem Uddin, Inc. v. Singer Architects, Inc.*, 278 So. 3d 89, 92 (Fla. 4th DCA 2019). Here, in the light most favorable to Plaintiff, WSP did not have supervisory duties related to NOIs 13, 18, and 44.

Plaintiff asserts that WSP "had a controlling role" regarding the pier-cracking issue addressed in NOIs 13, 18, and 44 because WSP "communicat[ed]

7

about" the pier-cracking with the County and CDM and "g[ave] its insight and opinion as to how to proceed with respect to" the problem. (Doc. 153 at 10). As support for this assertion, Plaintiff cites Mr. Charles's affidavit, (*id.*), in which he states that WSP was "heavily involved" with the pier-cracking issue because WSP's employees discussed the issue internally and because CDM responded to Plaintiff about the issue "in coordination with" WSP and the County, (Doc. 154 ¶ 23). But communicating, advising, discussing, and coordinating do not, in and of themselves, make an engineer a supervisor. *See McElvy, Jennewein, Stefany, Howard, Inc. v. Arlington Elec., Inc.*, 582 So. 2d 47, 47–48 (Fla. 2d DCA 1991) (finding that a contract with a city did not confer supervisory duties on architects although under the contract, the architects not only had to draw up plans and specifications for a construction project but also had to "use good faith in advising the [c]ity on the interpretation and application of the plans and specifications during construction"). To qualify as a supervisor under *Moyer*, an engineer must have more control over a project than is involved in merely advising a decisionmaker. *See Grace & Naeem*, 278 So. 3d at 93 (finding that an architect had supervisory duties when it "effectively controlled the project and the contractor's fate," "was broadly responsible for administration of the county/contractor contract," acted as the county's "eyes and ears" for the project, and had "near absolute authority regarding payments to the contractor"). Based on the record, no reasonable factfinder could conclude that WSP had the

requisite level of control over the pier-cracking discussed in NOIs 13, 18, and 44. Accordingly, WSP is entitled to summary judgment on the negligence claims related to those NOIs.

As to the remaining NOIs at issue, because even under the lower negligence standard of care, a factual dispute remains regarding whether WSP's conduct fell short, the Court will assume for the purpose of deciding WSP's motion for partial summary judgment that the same standard of care applies to the negligence and County-assigned claims. As to NOI 3, Mr. Nickas opines that WSP fell below the negligence standard of care when it failed to inform Plaintiff during the bidding stage of the project that the jetting method for bridge construction was to be prohibited. (Doc. 158 ¶ 18). And as to the rest of the NOIs, Dr. Poston opines that WSP fell below that standard of care when it wrote erroneous plans for the project and when it overreacted to naturally occurring pier-cracking. (Doc. 159 ¶¶ 7, 12, 21). *See Downs v. U.S. Army Corps of Eng'rs*, 517 F. App'x 717, 721 (11th Cir. 2013) (explaining that under Florida law, claims of professional negligence against an engineer must be supported by "expert testimony about the standard of care among engineers"). Because Plaintiff supports the remaining claims with standard-of-care evidence sufficient to create a genuine issue of material fact, WSP is not entitled to summary judgment on those claims.

**B.    First Costs**

The doctrine of first costs prevents a plaintiff "from obtaining damages
that put it in a better place than it would have been if a contract was performed
as agreed or if a tort never occurred." *AECOM Tech. Servs., Inc. v. Pro. Servs.
Indus., Inc.*, 580 F. Supp. 3d 1176, 1199 (M.D. Fla. 2021). In the engineering
context, when a plaintiff does not "derive an added benefit as a result of" out-of-
sequence construction costs and additional engineering expenses, the plaintiff
may recover those expenditures. *Soriano v. Hunton, Shivers, Brady & Assocs.*,
524 So. 2d 488, 490 n.2 (Fla. 5th DCA 1988); *accord Lochrane Eng'g v.
Willingham Realgrowth Inv. Fund*, 552 So. 2d 228, 233 (Fla. 5th DCA 1989)
(discussing a situation in which an engineer advises a landowner that a 1,000
square foot drain field is adequate, the landowner installs a 1,000 square foot
drain field based on the engineer's advice, and "later it is determined that a
1,200 square foot drain field was necessary" and explaining that "if the cost of
later installing the additional 200 feet of drain field costs more than it would
have cost if installed as part of the original undertaking, the engineer would be
liable for the difference as well as any other consequential damages").

WSP asserts that Plaintiff is not entitled to the damages that Plaintiff
seeks related to NOI 3 because those damages are prohibited first costs. (Doc.
142 at 21–25). In WSP's view, even if the jetting prohibition was clear from the
start, as Plaintiff contends that it should have been, the County "would have

10

incurred the costs on the front end." (*Id.* at 25). In response, Plaintiff acknowledges that its "bid would have been higher to account for no jetting" but contends that the doctrine of first costs does not apply because "costs and delays associated with procuring new equipment and performing out-of-sequence work would have been avoided" if WSP had announced the jetting prohibition in advance. (Doc. 153 at 25–28). There is evidence that WSP's failure to announce the jetting prohibition until Plaintiff's work on the project was well underway caused out-of-sequence construction costs and additional engineering expenses not proscribed under the doctrine. (*See* Doc. 154 ¶¶ 32–39). *See Soriano*, 524 So. 2d at 490 n.2; *Lochrane*, 552 So. 2d at 233. Accordingly, WSP is not entitled to summary judgment on this issue.

### C.    Lost Opportunity Costs

WSP makes two arguments that Plaintiff cannot recover lost opportunity costs for WSP's alleged negligence. (Doc. 142 at 25–28). First, WSP asserts that Mr. Wade used the financial data of Plaintiff's parent company—instead of Plaintiff's financial data—to calculate Plaintiff's lost opportunity costs. (*Id.* at 25–27). And second, says WSP, Plaintiff's lost opportunity costs were unforeseeable, remote, and speculative. (*Id.* at 27–28). The Court disagrees.

Mr. Wade's deposition testimony notwithstanding, the record reflects that Mr. Wade's calculation of Plaintiff's lost opportunity costs was based on Plaintiff's financial data—not its parent company's. (*See* Doc. 160 ¶¶ 7–15; Doc.

11

169-4 at 2; Doc. 170-9 at 48; Doc. 170-10 at 18; *see also* Doc. 203 at 2). Lost opportunity costs are recoverable under Florida law so long as the plaintiff proves "that 1) the defendant's action caused the damage and 2) there is some standard by which the amount of damages may be adequately determined." *W.W. Gay Mech. Contractor, Inc. v. Wharfside Two, Ltd.*, 545 So. 2d 1348, 1351 (Fla. 1989). There is evidence that WSP's negligent conduct "caused the damage" here. *Id.* (*See, e.g.*, Doc. 154 ¶ 39 (Mr. Charles's statement that WSP's prohibition on jetting "dealt a devastating blow to [Plaintiff] in terms of both construction time and construction cost")). And Mr. Wade provides a "standard by which the amount of damages may be adequately determined." *W.W. Gay*, 545 So. 2d at 1351. (*See, e.g.*, Doc. 170-9 at 48). As a result, WSP is not entitled to summary judgment on the issue of Plaintiff's lost opportunity costs.[2]

## IV.   CONCLUSION

For the reasons explained above, it is **ORDERED** that WSP's motion (Doc. 142) is **GRANTED in part and DENIED in part**. The Court grants summary judgment on all claims against WSP related to NOI 28 and on all negligence claims against WSP related to NOIs 13, 18, and 44. WSP's motion is otherwise denied.

---

[2] WSP devotes a single sentence in its reply brief to arguing that it should "be permitted to re-file dispositive motions on the issue of opportunity costs." (Doc. 168 at 12). Because this request lacks support, it will be denied. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (an assertion raised "in a perfunctory manner without supporting arguments and authority" is abandoned).

**DONE** and **ORDERED** in Orlando, Florida, on June 25, 2024.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record