# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**JOHNSON BROS. CORP.,**

       **Plaintiff,**

**v.**                                     **Case No. 6:21-cv-200-JA-EJK**

**WSP USA, INC. and CDM
SMITH, INC.,**

       **Defendants.**

_____

### ORDER

    This case is before the Court on Defendant CDM Smith, Inc.'s motion for summary judgment (Doc. 139), Plaintiff's response (Doc. 152), and CDM's reply (Doc. 166). Having reviewed the parties' submissions, the Court will grant the motion in part and deny it in part.

## I.    BACKGROUND

    This dispute stems from problems encountered during the design and construction of the Veterans Memorial Bridge, which spans a river in Volusia County, Florida. (Doc. 140 ¶ 1; Doc. 143 ¶ 1; Doc. 153 at 2). In February 2013, the County contracted with Defendant WSP USA, Inc. for design and engineering services on the bridge project. (Doc. 76-1 at 39; Doc. 140 ¶ 3; Doc. 143 ¶ 3; Doc. 153 at 2). Three years later, in February 2016, the County entered into a contract with Plaintiff whereby Plaintiff became the general

contractor for construction of the bridge. (Doc. 76-3 at 64; Doc. 140 ¶ 4; Doc. 143 ¶ 2; Doc. 153 at 5). Shortly thereafter, in March 2016, the County contracted with CDM for Construction, Engineering, and Inspection (CEI) services on the project. (Doc. 76-2 at 34; Doc. 140 ¶ 5; Doc. 143 ¶ 7; Doc. 153 at 3).

Whenever Plaintiff encountered a problem during the project that affected Plaintiff's work to the point that Plaintiff wanted reimbursement from the County, Plaintiff submitted an official Notice of Intent to File Claim (NOI) to the County regarding the problem. (*See, e.g.*, Doc. 76-4 at 2). Over the course of the project, Plaintiff submitted multiple NOIs. (Doc. 76 ¶ 23; Doc. 140 ¶ 7; Doc. 143 ¶¶ 13–15; *see* Doc. 153 at 9).

Initially in this lawsuit, Plaintiff sued only the County, (*see* Docs. 1, 9, 13, 36, & 70), alleging that the County "rejected or failed to respond to" claims raised in various NOIs, (Doc. 13 ¶¶ 10–11; Doc. 36 ¶¶ 10–11; Doc. 70 ¶¶ 10–11). The County filed a third-party complaint against WSP for indemnification, breach of contract, and negligence. (*See* Doc. 45). Eventually, Plaintiff settled with the County, and under the settlement agreement, the County assigned to Plaintiff rights to sue WSP and CDM for damages related to the project. (Doc. 76-49 §§ 2.1, 8.1). Plaintiff then sued WSP and CDM in Plaintiff's own right and as the County's assignee. (*See* Doc. 76). Recently, Plaintiff settled with WSP, (*see* Doc. 208), and in settling, Plaintiff "resolved in their entirety" some

of the claims against CDM, (Doc. 209 at 1–2).

Plaintiff now asserts claims against CDM in connection with nine NOIs: NOIs 3, 8, 13, 18, 20, 26, 35, 44, and 47. (*Id.* at 2). NOI 3 involves a prohibition on jetting, (Doc. 76 ¶ 23a)—a method of installing piling (structural support for bridges) that uses pressurized jets of water to loosen soil, (Doc. 137-4 at 4–5). NOI 8 involves broken piling. (Doc. 76 ¶ 23b). NOIs 13, 18, and 44 involve cracking in four piers. (*Id.* ¶¶ 23c–d, 23m). NOI 20 involves delays related to the project's erection plan, (*id.* ¶ 23e)—a plan that sets out the sequence of construction operations for a project while accounting for safety and structural stability during construction, (*see* Doc. 156-1 at 15–16, 22; *see also* Doc. 137-4 at 19–22). NOIs 26 and 35 involve problems with the construction of pier caps and a fishing pier, respectively. (Doc. 76 ¶¶ 23g, 23j). And NOI 47 seeks interest due under the Local Government Prompt Payment Act (the Act), (*id.* ¶ 23p). *See* Fla. Stat. § 218.735.

For each NOI, Plaintiff brings breach-of-contract and contractual-indemnification claims as the County's assignee and a negligence claim in its own right under Florida common law. (*See* Doc. 76 ¶ 26; *see, e.g., id.* ¶¶ 56–76 (the three counts against CDM related to NOI 3)). As the County's assignee, Plaintiff also asserts general-indemnification claims. (*Id.* ¶¶ 694–706). Among the damages that Plaintiff seeks are lost opportunity costs, which represent the investment loss that Plaintiff allegedly suffered when, instead of investing

money "in its corporate business," it spent that money on the project because of delays, inefficiencies, and extra work caused by Defendants' conduct. (Doc. 170-9 at 48). Plaintiff also seeks to recover—through its indemnification claims, (*e.g.*, Doc. 76 ¶ 670)—the attorney fees that the County incurred in defending against Plaintiff's claims. And in most of its breach-of-contract claims, Plaintiff mentions liquidated damages. (*E.g.*, *id.* ¶ 59).

Plaintiff supports its claims with evidence from lay and expert witnesses. The lay witnesses include Mr. James Charles and Mr. Tadd Kasbeer. Mr. Charles worked for Plaintiff as an assistant project manager for the bridge project and based on that experience describes the parties' conduct during the project. (Doc. 154 ¶¶ 6–40). Mr. Kasbeer worked as Assistant County Engineer and County Engineer for the project and describes the County's communications with CDM about the project and this litigation. (Doc. 155 ¶¶ 2–3, 6–10). The experts include Mr. Edwin Mackiewicz, Mr. William Nickas, Dr. Randall Poston, and Mr. Peter Wade. Plaintiff offers Mr. Mackiewicz as an expert on CEI customs and practices. (Doc. 156 ¶¶ 12–13). Plaintiff offers Mr. Nickas and Dr. Poston as engineering experts. (*See* Docs. 158 & 159). And Mr. Wade is Plaintiff's damages expert. (*See* Doc. 160).

Defendants filed *Daubert*[1] motions regarding the experts, (*see* Docs. 137 & 138), which the Court granted in part and denied in part, (*see* Doc. 204).

---

[1] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

WSP also filed a motion for partial summary judgment, (*see* Doc. 142), which the Court granted in part and denied in part, (*see* Doc. 205). CDM's motion for summary judgment overlaps, to an extent, with the *Daubert* motions and WSP's motion for partial summary judgment.

## II.   LEGAL STANDARD

Summary judgment shall be granted if the moving party "shows that there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court "view[s] the facts and draw[s] all reasonable inferences in favor of" the nonmoving party. *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1202 (11th Cir. 2013). The moving party bears the burden of demonstrating that no genuine issues of material fact remain. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden "may be discharged by 'showing'—that is, pointing out to the [C]ourt—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. When presented with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). The Court's role is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "In essence, . . . the inquiry . . . is . . . whether the

evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

## III.   DISCUSSION

The issues raised by CDM's motion for summary judgment are manifold. (*See* Doc. 139). First, the Court examines the issue of sovereign immunity. Next, the Court addresses the negligence claims against CDM. Then, the Court turns its attention to the County-assigned claims. Finally, the Court discusses issues related to Plaintiff's damages.

### A.   Sovereign Immunity

Florida has waived sovereign immunity in tort for the state's agencies and subdivisions, including "corporations primarily acting as instrumentalities or agencies of . . . counties," Fla. Stat. § 768.28(2), and has established rules for suing agents of the state. *See id. passim*. The general rule is that an "agent of the state or of any of its subdivisions may not be held personally liable in tort or named as a party defendant in any action for . . . damage suffered as a result of any" conduct that the agent undertook (or failed to undertake) "in the scope of [the agent's] employment." *Id.* § 768.28(9)(a). When this general rule applies, the "exclusive remedy" for the damage "is by action against the governmental entity, or the head of such entity in her or his official capacity, or the constitutional officer of which the . . . agent is an employee." *Id.* And

6

recovery is capped at $200,000 or, when multiple agencies or subdivisions are liable for the same incident, at a combined maximum of $300,000. *Id.* § 768.28(5)(a). The general rule does not apply if in committing the tort, the "agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." *Id.* § 768.28(9)(a).[2]

CDM asserts that it is entitled to sovereign immunity for all the negligence claims against it because it was an agent of the state acting within the scope of its employment—and without bad faith, malicious purpose, or wanton and willful disregard—when it engaged in the alleged misconduct related to the bridge project. (Doc. 139 at 12–18). Accordingly, CDM continues, it cannot be named as a defendant in this action, and Plaintiff's recovery must be capped at $300,000. (*Id.* at 16–17, 19–20).

Regardless of whether CDM acted with bad faith, malicious purpose, or wanton and willful disregard, CDM is not entitled to summary judgment on the issue of sovereign immunity because genuine issues of material fact remain regarding whether CDM was an agent of the state under the statute. A

---

[2] Part of the sovereign-immunity statute deals with Florida Department of Transportation projects and applies to "professional firm[s] that provide[] monitoring and inspection services of the work required for state roadway, bridge, or other transportation facility construction projects." Fla. Stat. § 768.28(10)(e). Although CDM mentions section 768.28(10)(e) in its motion, (*see* Doc. 139 at 13–19), it clarifies in its reply that the part of the sovereign-immunity statute at issue is section 768.28(9)(a), which "has nothing to do with" the Florida Department of Transportation, (Doc. 166 at 5).

private corporation qualifies as an agent of the state under the statute only when a state-governmental entity exercises (or has the right to exercise) sufficient control over the corporation. *See Plancher v. UCF Athletics Ass'n*, 175 So. 3d 724 (Fla. 2015). The "determination is a fact[-]intensive one that turns on the nature and degree of control exercised by the state over the private entity." *Posen Constr., Inc. v. Lee County*, 921 F. Supp. 2d 1350, 1359 (M.D. Fla. 2013) (citing *Stoll v. Noel*, 694 So. 2d 701, 703 (Fla. 1997)). Signs of sufficient control include that a state-governmental entity created the corporation, perpetuates its existence, constrains its operations, and controls its board of directors, budget, and other key aspects of its structure. *See Plancher*, 175 So. 3d at 726–29; *see also Fluid Dynamics Holdings, LLC v. City of Jacksonville*, 752 F. App'x 924, 926 (11th Cir. 2018) (applying "*Plancher*'s control test" and finding sufficient control over an organization when a city appointed and confirmed the organization's board members, approved its budget, had "unique powers over [its] revenues," and had the authority to "delineate[ its] powers"). When a corporation instead acts "as an autonomous and self-sufficient entity," it is not "primarily acting as an instrumentality on behalf of the state" for sovereign-immunity purposes. *Shands Teaching Hosp. & Clinics, Inc. v. Lee*, 478 So. 2d 77, 79 (Fla. 1st DCA 1985) (emphasis omitted).

CDM is not entitled to summary judgment on the issue of sovereign

immunity under section 768.28(9)(a) because the record evidence does not show that the County controlled CDM's operations to such an extent that CDM primarily acted as an instrumentality of the state rather than as an autonomous and self-sufficient entity. CDM's strongest argument is that its contract with the County required CDM to "act as an extension of the County's staff" for the project, (Doc. 76-2 at 35), and gave the County "control over CDM in the conduct of CDM's duties" concerning the project. (*See* Doc. 139 at 15– 16). But *Plancher*'s control test asks the Court to look beyond a particular project to examine the corporation in general—its creation, overall operations, and structure, including its board and its budget. *See* 175 So. 3d at 726–29. CDM does not even mention these topics in its motion or reply. (*See* Docs. 139 & 166). Because a genuine issue of material fact remains as to whether the County sufficiently controlled CDM to make CDM an agent of the state for sovereign-immunity purposes, CDM is not entitled to summary judgment on the sovereign-immunity issue.

### B.   Negligence Claims

CDM maintains that it is entitled to summary judgment on Plaintiff's negligence claims because CDM did not owe Plaintiff a duty and did not proximately cause Plaintiff's damages. (Doc. 139 at 2–10). *See Clay Elec. Coop., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003) (listing duty and proximate causation among the elements of negligence under Florida law). The

Court discusses duty and proximate causation in turn.

### 1.   *Duty*

CDM asserts that for it to have owed Plaintiff a duty absent contractual privity, CDM must have exercised control over Plaintiff such that the misuse of that control foreseeably caused Plaintiff damages. (Doc. 139 at 3 (citing *A. R. Moyer, Inc. v. Graham*, 285 So. 2d 397, 402 (Fla. 1973), and its progeny)). In CDM's view, Plaintiff cannot show that CDM controlled Plaintiff's work on the project because the County retained ultimate decision-making power for "all aspects of [Plaintiff]'s work." (*Id.* at 4–5). However, a plaintiff contractor may show that the defendant "ha[d] the requisite control . . . even without ultimate decision-making power" so long as the defendant performed supervisory duties and shared a close nexus with the plaintiff. *Grace & Naeem Uddin, Inc. v. Singer Architects, Inc.*, 278 So. 3d 89, 92–93 (Fla. 4th DCA 2019). Here, there is evidence that CDM sufficiently controlled Plaintiff's work.

CDM's contract with the County required CDM to "act as an extension of the County's staff," "observe [Plaintiff]'s work to determine the progress and quality of the work," "administer, monitor, and inspect the construction" so that the project would be "constructed in conformity with" the construction contract, observe nonconformities "and direct [Plaintiff] to correct" them, "keep detailed accurate records of [Plaintiff]'s daily operations," "provide daily surveillance of" Plaintiff's quality-control activities, and furnish various other

services related to on-site inspection, sampling and testing, and engineering for the project. (Doc. 76-2 at 35–38). Mr. Charles confirms in an affidavit that CDM in fact "routinely monitored" Plaintiff's work on the project. (*Id.* ¶ 11). And he further states that CDM twice ordered Plaintiff to stop work and that CDM affected Plaintiff's payment (by revising Plaintiff's payment applications, "[r]ecommending and certifying the amounts of payments to be issued by [the] County" to Plaintiff, and delaying payment). (Doc. 154 ¶¶ 14–16).

Mr. Charles also describes a close connection between CDM and Plaintiff during the project given that they "regularly attended" project meetings and inspections together and "frequently observed the [p]roject together." (*Id.* ¶¶ 10–11). Thus, there is evidence that CDM performed supervisory duties related to the project and shared a close nexus with Plaintiff, which creates a genuine factual dispute as to whether CDM controlled Plaintiff's work sufficiently to establish a duty under Florida law. *See Grace & Naeem*, 278 So. 3d at 93 (finding sufficient control when the defendant acted as the County's "eyes and ears" for the project, exercised a great deal of power over the plaintiff's payment, and "had the authority to recommend work stoppage"). Accordingly, CDM is not entitled to summary judgment on the negligence claims against it based on the duty element of the claims.

  2.    *Proximate Causation*

CDM contends that Plaintiff cannot establish proximate causation for

any of the negligence claims against CDM because the undisputed record evidence shows that Plaintiff, WSP, and the County—not CDM—proximately caused Plaintiff's damages. (Doc. 139 at 7–10). The Court finds CDM's position unpersuasive for two reasons.

First, CDM must support its position with legal authority. *See United States v. Markovich*, 95 F.4th 1367, 1379 (11th Cir. 2024) (holding that a defendant forfeited his position when he "cite[d] no legal authority to support it"). But the proximate-causation portion of CDM's motion is devoid of any citation to legal authority except one brief citation to the Act. (*See* Doc. 139 at 7–10).[3] Thus, CDM fails to support its position.

Second, a reasonable factfinder could conclude from the record that CDM proximately caused Plaintiff's damages. The Florida Supreme Court has defined "proximate cause" in the negligence context as "[a] reasonably close causal connection between the [defendant's negligent] conduct and the [plaintiff's] resulting injury." *Clay Elec.*, 873 So. 2d at 1185 (quoting *Prosser and Keaton on the Law of Torts* 164–65 (W. Page Keeton ed., 5th ed. 1984)). Here, Mr. Mackiewicz's statements support that CDM engaged in negligent conduct related to the NOIs at issue when CDM deviated from CEI customs

---

[3] This portion of the motion is replete with references to the factual record, (*see id.*), but these factual references do not provide legal authority.

and practices. (*E.g.*, Docs. 156, 156-1, 156-2, & 156-3).[4] There is evidence, for example, that CDM did not act as a reasonable CEI professional would have when interpreting contract documents, reviewing design changes, or participating in the permitting process. (*See* Doc. 156 ¶ 15). And there is evidence that CDM failed to perform its services in a timely manner, failed to give adequate consideration to "the time and cost impact[s] of plan revisions," and failed to "facilitate dispute resolution to resolve disputes before they [could] cause impacts and delays on the [p]roject." (*Id.*).

As for the resulting injury, the record contains evidence that Plaintiff suffered economic damages from the delays caused by CDM's negligent conduct. (*See, e.g.*, Doc. 154 ¶ 39; Doc. 160-1 at 6, 55). Because a reasonable factfinder could find a "reasonably close causal connection" between CDM's negligent conduct and Plaintiff's resulting injury, *Clay Elec.*, 873 So. 2d at 1185, CDM is not entitled to summary judgment on the negligence claims against it based on the proximate-causation element of the claims. *See also Colon v. Twitter, Inc.*, 14 F.4th 1213, 1224 (11th Cir. 2021) ("In the absence of a freakish and improbable chain of events leading to injury, the question of foreseeability as it relates to proximate causation generally must be left to the

---

[4] In its reply, CDM argues that "the Court should disregard" as "inadmissible legal opinion" Mr. Mackiewicz's statements about CEI customs and practices. (Doc. 166 at 4). As the Court stated in its order on CDM's motion to exclude Mr. Mackiewicz's statements, "Mr. Mackiewicz will be permitted to opine on CEI customs and practices." (Doc. 204 at 7).

factfinder to resolve." (internal quotation marks omitted) (quoting *Ruiz v. Tenet Hialeah Health Sys., Inc.*, 260 So. 3d 977, 982 (Fla. 2018))).

To recap, because genuine issues of material fact remain as to duty and proximate causation, CDM is not entitled to summary judgment on the negligence claims. The Court now turns to the County-assigned claims.

## C.   County-Assigned Claims

CDM challenges all County-assigned claims on grounds related to Plaintiff's settlement with the County and then focuses on the breach-of-contract claims and the County-assigned claims related to NOI 44.[5] (Doc. 139 at 25–27). The Court discusses Plaintiff's settlement with the County, the breach-of-contract claims, and the NOI 44 claims in turn.

### 1.    *Plaintiff's Settlement with the County*

Pursuant to Plaintiff's settlement agreement with the County, the County assigned to Plaintiff its rights to sue Defendants and paid Plaintiff almost six million dollars; in exchange, Plaintiff broadly released the County from liability related to the bridge project. (Doc. 76-49 §§ 1.0, 2.1, 8.1–8.2). The settlement agreement allocates the County's total payment to Plaintiff among various NOIs no longer at issue in this case, (*id.* § 2.5), and treats the County's assignment of rights as consideration for Plaintiff's promise not to pursue "additional damages against the County due to design deficiencies and other

---

[5] CDM's motion addresses NOIs 44 and 45 together. (Doc. 139 at 26–27). But NOI 45 is no longer at issue. (Doc. 209 at 1).

issues," (*id.* § 2.1). Consistent with the assignment, the settlement agreement reflects the intent of the County and Plaintiff "not . . . to release, waive, or affect in any way any claims [that the County or Plaintiff] may have against WSP and/or CDM." (*Id.* § 2.5). The settlement agreement also provides that Plaintiff "shall be able to continue to assert in [this lawsuit] or otherwise the County's third-party complaint as well as any additional claims [that Plaintiff] may have against WSP, CDM[,] or any other third party associated with the [p]roject." (*Id.* § 2.6). Indeed, the settlement agreement contains repeated assurances that "nothing in [it] shall be construed as any form of release by [Plaintiff] or [the] County against WSP, CDM[,] or any other third party associated with the [p]roject." (*Id.* §§ 2.1–2.3, 2.6).

CDM contends that all County-assigned claims must fail because Plaintiff cannot show that the County suffered damages in this case. (Doc. 139 at 25; Doc. 168 at 9). CDM provides three reasons for its position. (Doc. 139 at 25). First, "the County, as the owner of the bridge[,] is responsible for any and all costs claimed by [Plaintiff] to build it." (*Id.*). Second, "[t]he County did not suffer any damages related to the NOIs at issue in this action because none of the money [that] the County paid [Plaintiff] as part of their settlement was allocated to" those NOIs. (*Id.*). And third, "the County never can or will suffer any damages for the . . . NOIs because [Plaintiff] released the County from any such liability or exposure." (*Id.*). CDM does not support its position with legal

15

authority. (*See id.*). *See Markovich*, 95 F.4th at 1379. In any event, none of its reasons are persuasive.

As to CDM's first reason, CDM fails to explain why the County could not recover against CDM for construction costs incurred as a result of CDM's breach of its contractual duties. These duties include "adher[ing] to the standard of care applicable to a consultant with the degree of skills and diligence normally employed by a licensed professional in his field or practice performing the same or similar services or [w]ork." (Doc. 76-2 at 16). There is evidence that CDM breached this duty. (*E.g.*, Doc. 156 ¶¶ 15, 17, 19, 21–24). If CDM's breach caused the County damages, the County could sue, *see Domante v. Dish Networks, LLC*, 974 F.3d 1342, 1347 (11th Cir. 2020), so Plaintiff can sue as the County's assignee, *see Nationwide Mut. Fire Ins. Co. v. Pinnacle Med., Inc.*, 753 So. 2d 55, 57 (Fla. 2000).

As to CDM's second reason, although the County did not give Plaintiff money for the NOIs now at issue in this case, it gave Plaintiff valuable consideration in the form of an assignment of rights so that Plaintiff would not pursue "additional damages against the County" related to the project. (Doc. 76-49 § 2.1). *Cf. Lake Sarasota, Inc. v. Pan Am. Sur. Co.*, 140 So. 2d 139, 142 (Fla. 2d DCA 1962) ("The consideration required to support a contract need not be money or anything having monetary value, but may consist of either a benefit to the promisor or a detriment to the promisee."). Such "additional

damages" could stem from the NOIs now at issue in this case, which were not among the NOIs for which payment was allocated in the settlement agreement. (*See* Doc. 76-49 § 2.5).

As to CDM's third reason, Florida law permits the simultaneous assignment of a claim and release of that claim. *See Wachovia Ins. Servs., Inc. v. Toomey*, 994 So. 2d 980, 986 (Fla. 2008). What matters is the intent of the contracting parties. *See id.* A defendant cannot "escape liability by relying on a document executed by others when those parties did not intend to release [the defendant] from liability." *Id.* at 987. Here, the County and Plaintiff clearly intended that Plaintiff would assert County-assigned claims related to the project against Defendants. (*See* Doc. 76-49 §§ 2.1–2.3, 2.5–2.6). Accordingly, Plaintiff's release of the County from liability does not bar Plaintiff from suing Defendants as the County's assignee.

CDM has not established that Plaintiff's settlement agreement with the County prohibits Plaintiff from pursuing its County-assigned claims. Accordingly, CDM is not entitled to summary judgment on this issue.

### 2. *Breach-of-Contract Claims*

Under Florida law, the "elements of a breach[-]of[-]contract action are (1) a valid contract[,] (2) a material breach[,] and (3) damages." *Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999) (citing *Abruzzo v. Haller*, 603 So. 2d 1338, 1340 (Fla. 1st DCA 1992)). CDM advances two

arguments regarding the breach-of-contract claims. (Doc. 139 at 26). First, CDM argues, Plaintiff cannot establish a material breach because "the County found no deficiencies in CDM's performance of its scope of work." (*Id.*). And second, says CDM, Plaintiff cannot establish damages for the reasons that CDM asserts related to Plaintiff's settlement with the County. (*Id.*). The Court rejects both arguments as conclusory. (*See id.*). *See Carrizosa v. Chiquita Brands Int'l, Inc.*, 47 F.4th 1278, 1335 (11th Cir. 2022) ("[A] conclusory argument is insufficient."). Additionally, the Court rejects the second argument for the reasons explained above concerning the settlement. And the Court rejects the first argument because a factual dispute remains as to whether CDM's performance under its contract with the County was deficient. (*See, e.g.*, Doc. 76-2 at 16 (requiring CDM to "adhere to the standard of care applicable to a consultant with the degree of skills and diligence normally employed by a licensed professional in his field or practice performing the same or similar services or [w]ork"); Docs. 156, 156-1, 156-2, & 156-3 (supporting that CDM did not act as a reasonable CEI professional)). Accordingly, CDM is not entitled to summary judgment on the breach-of-contract claims.

### 3.   NOI 44

With respect to the NOI 44 claims, Plaintiff's contract with the County required Plaintiff to follow specific procedures for submitting NOIs and

seeking extensions of time regarding NOIs. (Doc. 76-3 at 20–22). And CDM maintains that Plaintiff's County-assigned claims related to NOI 44 are legally barred because Plaintiff did not comply with and was not excused from these procedural requirements as to NOI 44. (Doc. 139 at 26–27). The entirety of CDM's argument—aside from a single, unsupported sentence lamenting the "absurd[ity]" of bringing a claim on the County's behalf that "the County itself denies exists," (*id.* at 27)—is that earlier in this action, when the County moved to dismiss the NOI 44 claims, (Doc. 40 at 7–10), the Court denied the motion, (Doc. 69 at 7). (*See* Doc. 139 at 26–27; *see also* Doc. 166). The Court explained at that time that Plaintiff's compliance with and excusal from the contract's procedural requirements were issues more appropriate for summary judgment. (Doc. 69 at 4–6). Now that this case has reached the summary-judgment stage, however, CDM does not explain what, if anything, entitles it to enforce requirements contained in a contract between the County and Plaintiff. (*See* Docs. 139 & 166). Elsewhere in its motion, CDM asserts that only a contract's parties and intended third-party beneficiaries can enforce a contract's obligations. (Doc. 139 at 2 (citing *Rebman v. Follett Higher Educ. Grp., Inc.*, 575 F. Supp. 2d 1272, 1276 (M.D. Fla. 2008))); *see Caretta Trucking, Inc. v. Cheoy Lee Shipyards, Ltd.*, 647 So. 2d 1028, 1030–31 (Fla. 4th DCA 1994). If so, CDM is not a party to Plaintiff's contract with the County, (*see* Doc. 76-3 at 2, 64), and does not claim in its motion to be an intended third-

party beneficiary of that contract, (*see* Doc. 139; *see also* Doc. 166).

"[A]s a general rule," parties—not courts—"are responsible for advancing the facts and argument entitling [the parties] to relief." *United States v. Sineneng-Smith*, 590 U.S. 371, 375–76 (2020) (quoting *Castro v. United States*, 540 U.S. 375, 386 (2003) (Scalia, J., concurring in part and concurring in the judgment)). Accordingly, the Court will not make CDM's argument for CDM. As it stands, that argument is unpersuasive, and CDM is not entitled to summary judgment as to NOI 44.

### D.   Damages

In its motion, CDM raises four damages issues: attorney fees, first costs, lost opportunity costs, and liquidated damages. (Doc. 139 at 20–25). The Court addresses these issues in turn.

#### 1.   Attorney Fees

CDM contends that Plaintiff cannot seek indemnification from it for the attorney fees that the County incurred in defending against Plaintiff's claims. (*See* Doc. 139 at 23–24). CDM makes two main points here. (*Id.*). First, says CDM, it had insufficient opportunity to defend against Plaintiff's underlying claims against the County because the County settled with Plaintiff only five days after the County first sought indemnification from CDM and up to that point the County had given CDM no indication that CDM had underperformed. (*Id.*). And second, CDM maintains that Plaintiff "cannot

establish that the County was not at fault with respect to" the underlying claims. (*Id.* at 24).

On the first point, when a person settles a lawsuit brought by a third party and then sues a defendant for indemnification, Florida law requires the person to "prove its 'actual or potential liability' to th[e] third party" before the person can recover from the defendant. *Coquina Invs. v. TD Bank, N.A.*, 760 F.3d 1300, 1316 (11th Cir. 2014) (quoting *GAB Bus. Servs., Inc. v. Syndicate 627*, 809 F.2d 755, 760–61 (11th Cir. 1987)). Proof of potential liability suffices when the person "inform[s] the defendant of a proposed settlement"—giving the defendant the "opportunity to review or participate in the settlement"— "and the defendant fail[s] to object." *Id.* Otherwise, proof of actual liability is required. *Id.* Here, the County settled with Plaintiff, and now Plaintiff, standing in the County's shoes, seeks attorney fees from CDM through the indemnification claims. Thus, Plaintiff must establish the County's liability to Plaintiff—either actual or potential liability depending on whether CDM had sufficient opportunity to participate in the settlement between the County and Plaintiff. *See Coquina Invs.*, 760 F.3d at 1316.

CDM does not mention the actual-versus-potential-liability distinction in its motion. (*See* Doc. 139). Nor does CDM directly address its opportunity to participate in the County's settlement with Plaintiff; CDM's motion is silent as to CDM's awareness of and involvement in the settlement. (*See id.*). In any

event, regarding CDM's opportunity to defend the underlying claims, a reasonable factfinder could conclude from the record that CDM had sufficient opportunity. According to Mr. Kasbeer's affidavit, for example, CDM was aware of Plaintiff's NOIs during the project, was "immediately notified" of the complaint that Plaintiff filed against the County in this case, (*see* Doc. 1), and "[a]t all relevant times" could have provided the County with defense counsel, paid the County's legal costs, or otherwise participated in the County's defense. (Doc. 155 ¶¶ 6, 8, 10). Viewing the record in the light most favorable to Plaintiff, the Court cannot conclude based on CDM's first point that Plaintiff cannot recover the County's attorney fees through the indemnification claims.[6]

On the second point, "[u]nder Florida law, agreements to indemnify parties against their own wrongful acts are not favored and will be enforced only if they express such an intent in clear and unequivocal terms." *Gibbs v. Air Canada*, 810 F.2d 1529, 1534 (11th Cir. 1987) (citing *Charles Poe Masonry*,

---

[6] CDM cites *Northbrook Property & Casualty Co. v. City National Bank*, 591 So. 2d 1026, 1028 (Fla. 3d DCA 1991), for the proposition that when an indemnitor does not have a sufficient opportunity to defend, an indemnitee cannot recover attorney fees "where the indemnification clause in [the] contract is not invoked until years into the litigation." (Doc. 139 at 23). The Court does not read *Northbrook* as establishing such a broad proposition. *Northbrook* stated the general rule that "recovery of legal expenses is a proper component of an indemnity claim" before explaining that the "general rule d[id] not apply" given the peculiar facts of the case. 591 So. 2d at 1028. *Northbrook* is thus distinguishable. At any rate, as explained above, a factual dispute remains as to whether CDM had a sufficient opportunity to defend.

*Inc. v. Spring Lock Scaffolding Rental Equip. Co.*, 374 So. 2d 487, 489 (Fla. 1979)). CDM's contract with the County sweeps broadly with respect to indemnification, requiring CDM to indemnify the County "from and against all claims of every kind and nature" resulting from CDM's negligent performance of the contract. (Doc. 76-2 at 20–21). But the contract does not require CDM to indemnify the County for claims that are "the result of the sole negligence of the County." (*Id.*). Thus, the contract expressly covers indemnification situations in which the County is negligent but the underlying claims are not "the result of" the County's "sole negligence." (*Id.*). The Court will not rewrite the contract. *See Beach Resort Hotel Corp. v. Wieder*, 79 So. 2d 659, 663 (Fla. 1955).

For all these reasons, CDM is not entitled to summary judgment on the attorney-fees issue.

### 2.   First Costs

The doctrine of first costs prevents a plaintiff "from obtaining damages that put it in a better place than it would have been if a contract was performed as agreed or if a tort never occurred." *AECOM Tech. Servs., Inc. v. Pro. Servs. Indus., Inc.*, 580 F. Supp. 3d 1176, 1199 (M.D. Fla. 2021). In the engineering context, when a plaintiff does not "derive an added benefit as a result of" out-of-sequence construction costs and additional engineering expenses, the plaintiff may recover those expenditures. *Soriano v. Hunton,*

*Shivers, Brady & Assocs.*, 524 So. 2d 488, 490 n.2 (Fla. 5th DCA 1988); *accord Lochrane Eng'g v. Willingham Realgrowth Inv. Fund*, 552 So. 2d 228, 233 (Fla. 5th DCA 1989) (discussing a situation in which an engineer advises a landowner that a 1,000 square foot drain field is adequate, the landowner installs a 1,000 square foot drain field based on the engineer's advice, and "later it is determined that a 1,200 square foot drain field was necessary" and explaining that "if the cost of later installing the additional 200 feet of drain field costs more than it would have cost if installed as part of the original undertaking, the engineer would be liable for the difference as well as any other consequential damages").

CDM takes the position that in general, Plaintiff cannot recover first costs and joins in the argument made by WSP in a previously resolved motion that as to NOI 3 in particular, Plaintiff's damages are prohibited under the doctrine. (Doc. 139 at 20–21; *see* Doc. 142 at 22–25). The Court agrees with Plaintiff that "other than the damages" related to NOI 3, "CDM does not discuss how or why the various damages sought by [Plaintiff] constitute first costs." (Doc. 152 at 14; *see* Doc. 139 at 20–21). Thus, if CDM is entitled to summary judgment on this issue at all, it is entitled to it only as to NOI 3. *See Celotex*, 477 U.S. at 323, 325. That said, the Court rejects CDM's NOI 3 argument for the same reasons that it rejected WSP's. (*See* Doc. 205 at 10–11). Namely, there is evidence that the "prohibition on jetting employed by CDM"

caused out-of-sequence construction costs and additional engineering expenses not proscribed under the doctrine. (Doc. 154 ¶ 39). *See Soriano*, 524 So. 2d at 490 n.2; *Lochrane*, 552 So. 2d at 233. Accordingly, CDM is not entitled to summary judgment on the issue of first costs.

### 3. *Lost Opportunity Costs*

CDM challenges Plaintiff's claim for lost opportunity costs on essentially the same grounds that WSP asserted in its motion for partial summary judgment. (*Compare* Doc. 139 at 22, *with* Doc. 142 at 25–28; *see also* Doc. 152 at 14–15). Thus, the Court rejects CDM's challenge for the reasons that it rejected WSP's. (*See* Doc. 205 at 11–12). Namely, the record reflects that Mr. Wade's calculation of Plaintiff's lost opportunity costs was based on Plaintiff's financial data. (*See* Doc. 160 ¶¶ 7–15; Doc. 169-4 at 2; Doc. 170-9 at 48; Doc. 170-10 at 18; *see also* Doc. 203 at 2). There is evidence that CDM's negligent conduct caused Plaintiff damage. (*See, e.g.*, Doc. 154 ¶ 39 (Mr. Charles's statement that CDM's prohibition on jetting "dealt a devastating blow to [Plaintiff] in terms of both construction time and construction cost")). And Mr. Wade provides a "standard by which the amount of damages may be adequately determined." *W.W. Gay Mech. Contractor, Inc. v. Wharfside Two, Ltd.*, 545 So. 2d 1348, 1351 (Fla. 1989). (*See, e.g.*, Doc. 170-9 at 48). To the extent that CDM raises other arguments, they are unpersuasive because they are conclusory and devoid of legal authority, *see Markovich*, 95 F.4th at 1379,

and do not view the record in the light most favorable to Plaintiff, *see Kidd*, 731 F.3d at 1202. (*See* Doc. 139 at 22).

### 4.   *Liquidated Damages*

CDM maintains that Plaintiff cannot recover liquidated damages. (Doc. 139 at 24–25). In response, Plaintiff states that it "is not seeking liquidated damages in this case." (Doc. 152 at 21). Given Plaintiff's position, the Court will grant CDM summary judgment on the issue of liquidated damages.

## IV.   CONCLUSION

For the reasons explained above, it is **ORDERED** that CDM's motion (Doc. 139) is **GRANTED in part and DENIED in part**. The motion is **granted** as to liquidated damages. The motion is otherwise **denied**.

**DONE** and **ORDERED** in Orlando, Florida, on July 2, 2024.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record

26