UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JOHNSON BROS. CORP.,

    Plaintiff,

v.                                                                       Case No. 6:21-cv-200-JA-EJK

WSP USA, INC. and CDM
SMITH, INC.,

    Defendants.

## ORDER

This case is before the Court on Defendant CDM Smith, Inc.'s motion in limine (Doc. 183) and Plaintiff's response (Doc. 197). Having reviewed the parties' submissions, the Court will grant the motion in part, deny it in part, and reserve ruling in part.

### I.    BACKGROUND

This dispute stems from problems encountered during the design and construction of the Veterans Memorial Bridge in Volusia County, Florida. (Doc. 140 ¶ 1; Doc. 143 ¶ 1; Doc. 153 at 2). In February 2013, the County contracted with Defendant WSP USA, Inc. for design and engineering services on the bridge project. (Doc. 76-1 at 39; Doc. 140 ¶ 3; Doc. 143 ¶ 3; Doc. 153 at 2). Three years later, in February 2016, the County entered into a contract with Plaintiff whereby Plaintiff became the general contractor for construction of the bridge.

(Doc. 76-3 at 64; Doc. 140 ¶ 4; Doc. 143 ¶ 2; Doc. 153 at 5). Shortly thereafter, in March 2016, the County contracted with Defendant CDM Smith, Inc. for Construction, Engineering, and Inspection (CEI) services on the project. (Doc. 76-2 at 34; Doc. 140 ¶ 5; Doc. 143 ¶ 7; Doc. 153 at 3).

Whenever Plaintiff encountered a problem during the project that affected Plaintiff's work to the point that Plaintiff wanted reimbursement from the County, Plaintiff submitted an official Notice of Intent to File Claim (NOI) to the County regarding the problem. (*See, e.g.*, Doc. 76-4 at 2). Over the course of the project, Plaintiff submitted multiple NOIs. (Doc. 76 ¶ 23; Doc. 140 ¶ 7; Doc. 143 ¶¶ 13–15; *see* Doc. 153 at 9).

Initially in this lawsuit, Plaintiff sued only the County, (*see* Docs. 1, 9, 13, 36, & 70), alleging that the County "rejected or failed to respond to" claims raised in various NOIs, (Doc. 13 ¶¶ 10–11; Doc. 36 ¶¶ 10–11; Doc. 70 ¶¶ 10–11). The County filed a third-party complaint against WSP for indemnification, breach of contract, and negligence. (*See* Doc. 45). Eventually, Plaintiff settled with the County, and under the settlement agreement, the County assigned to Plaintiff rights to sue WSP and CDM for damages related to the project. (Doc. 76-49 §§ 2.1, 8.1). Plaintiff then sued WSP and CDM in Plaintiff's own right and as the County's assignee. (*See* Doc. 76). Recently, Plaintiff settled with WSP, (*see* Doc. 208), and in settling, Plaintiff "resolved in their entirety" some of the claims against CDM, (Doc. 209 at 1–2).

Plaintiff now asserts claims against CDM in connection with nine NOIs: NOIs 3, 8, 13, 18, 20, 26, 35, 44, and 47. (*Id.* at 2). NOI 3 involves a prohibition on jetting, (Doc. 76 ¶ 23a)—a method of installing piling (structural support for bridges) that uses pressurized jets of water to loosen soil, (Doc. 137-4 at 4–5). NOI 8 involves broken piling. (Doc. 76 ¶ 23b). NOIs 13, 18, and 44 involve cracking in four piers. (*Id.* ¶¶ 23c–d, 23m). NOI 20 involves delays related to the project's erection plan, (*id.* ¶ 23e)—a plan that sets out the sequence of construction operations for a project while accounting for safety and structural stability during construction, (*see* Doc. 156-1 at 15–16, 22; *see also* Doc. 137-4 at 19–22). NOIs 26 and 35 involve problems with the construction of pier caps and a fishing pier, respectively. (Doc. 76 ¶¶ 23g, 23j). And NOI 47 seeks interest due under the Local Government Prompt Payment Act (the Act), (*id.* ¶ 23p). *See* Fla. Stat. § 218.735.

For each NOI, Plaintiff brings breach-of-contract and contractual-indemnification claims as the County's assignee and a negligence claim in its own right under Florida common law. (*See* Doc. 76 ¶ 26; *see, e.g., id.* ¶¶ 56–76 (the three counts against CDM related to NOI 3)). As the County's assignee, Plaintiff also asserts general-indemnification claims. (*Id.* ¶¶ 694–706). Among the damages that Plaintiff seeks are lost opportunity costs, which represent the investment loss that Plaintiff allegedly suffered when, instead of investing money "in its corporate business," it spent that money on the project because of

3

delays, inefficiencies, and extra work caused by Defendants' conduct. (Doc. 170-9 at 48). Plaintiff also seeks to recover—through its indemnification claims—the attorney fees that the County incurred in defending against Plaintiff's claims. (*See, e.g.*, Doc. 76 ¶ 670). CDM now moves to exclude several categories of evidence.

## II. LEGAL STANDARD

CDM mainly brings its motion pursuant to Federal Rule of Evidence 403. (*See* Docs. 181 & 183). This rule allows a court to "exclude relevant evidence if [the] probative value [of the evidence] is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Because it allows a trial court to exclude evidence that is probative, Rule 403 is 'an extraordinary remedy which should be used sparingly.'" *Aycock v. R.J. Reynolds Tobacco Co.*, 769 F.3d 1063, 1069 (11th Cir. 2014) (quoting *United States v. King*, 713 F.2d 627, 631 (11th Cir. 1983)). "Accordingly, the balance [under the rule] should be struck in favor of admissibility." *Id.* Courts "look at the [challenged] evidence in [the] light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." *United States v. Elkins*, 885 F.2d 775, 784 (11th Cir. 1989). A "court's discretion to exclude evidence under Rule 403 is narrowly circumscribed." *United States v. Norton*, 867 F.2d 1354, 1361 (11th Cir. 1989).

## III. DISCUSSION

The motion addresses eight topics: (1) Plaintiff's claims as the County's assignee, (2) lost opportunity cost damages, (3) certification of foundations, (4) Plaintiff's arbitration with a nonparty subcontractor, (5) the County's attorney fees, (6) CDM's purported contractual obligation to detect errors in WSP's deliverables, (7) CDM's purported contractual obligation to act as a neutral judge of Plaintiff's claims, and (8) a prior dispute between Plaintiff and CDM's predecessor company. (*See* Doc. 183). The Court discusses these topics in turn.

### A. Plaintiff's Claims as the County's Assignee

CDM seeks to exclude any reference to Plaintiff's County-assigned claims and to any "damages purportedly sustained by [the] County that were not allocated in" Plaintiff's settlement agreement with the County. (*Id.* at 4–5 (emphasis omitted); *see* Doc. 181 at 3–8). CDM argues—based on the settlement agreement—that because the County never incurred damages related to the NOIs at issue in this case, Plaintiff cannot bring claims as the County's assignee. (*See* Doc. 181 at 3–8; Doc. 183 at 4; *see also* Doc. 197 at 2–6). CDM made the same argument in its motion for summary judgment. (*See* Doc. 139 at 25). The Court rejected that argument then for multiple reasons—including that under the settlement agreement, the County "gave Plaintiff valuable consideration in the form of an assignment of rights" so Plaintiff could sue CDM for damages "stem[ming] from the NOIs now at issue in this case," (Doc. 212 at

5

14–17)—and rejects it now for the same reasons.

### B. Lost Opportunity Cost Damages

CDM seeks to prohibit Plaintiff from presenting lost opportunity cost damages to the jury, contending that such damages are speculative and unreliable. (Doc. 183 at 4–6; *see* Doc. 181 at 8–11). CDM made this argument in its motion for summary judgment, (Doc. 139 at 22), and the Court rejected it, (Doc. 212 at 25–26). The Court explained that "the record reflect[ed] that [the] calculation of Plaintiff's lost opportunity costs" made by Plaintiff's damages expert was properly "based on Plaintiff's financial data," that "[t]here [wa]s evidence that CDM's negligent conduct caused Plaintiff damage," and that the damages expert provided a standard by which the amount of damages could be properly determined. (*Id.* at 25). *See W.W. Gay Mech. Contractor, Inc. v. Wharfside Two, Ltd.*, 545 So. 2d 1348, 1351 (Fla. 1989). The Court will deny CDM's motion in limine as to lost opportunity cost damages for the same reasons.

### C. Certification of Foundations

CDM seeks to exclude any reference to certification of foundations related to resolution of a sign convention error encountered during the project. (Doc. 183 at 4, 10; *see* Doc. 181 at 15–17). Focusing on its contract with the County, CDM maintains that there is no "evidence that CDM had any obligation to certify foundations." (Doc. 183 at 10). In response, Plaintiff points to an e-mail from

WSP to CDM that contemplates certification of foundations and argues that the e-mail is evidence that "a reasonable, prudent professional" in CDM's position "would have sought certification from [a] geotechnical engineer as part of an independent, peer review to resolve the sign convention error." (Doc. 197 at 15–16). The Court agrees with Plaintiff. CDM's contract required CDM to "adhere to the standard of care applicable to a consultant with the degree of skills and diligence normally employed by a licensed professional in his field or practice performing the same or similar services or [w]ork." (Doc. 76-2 at 16). The issue of certification of foundations is probative given CDM's duty to adhere to that standard of care. The Court will thus deny CDM's motion in limine on this issue.

### D. Plaintiff's Arbitration with the Nonparty Subcontractor

CDM seeks to exclude any evidence of Plaintiff's arbitration with a nonparty subcontractor, as well as any reference to the arbitration award, the attorney fees and costs that Plaintiff incurred in connection with the arbitration, and Florida's wrongful act doctrine, which Plaintiff asserts as the basis for its entitlement to the fees. (Doc. 183 at 4, 6–7; see Doc. 181 at 17–20). In addition to arguing under Rule 403, CDM contends that the arbitration "award is inadmissible hearsay not subject to any exception." (Doc. 183 at 6). Since settling with WSP, Plaintiff is no longer invoking the wrongful act doctrine or pursuing the attorney fees that Plaintiff incurred in the arbitration. (Doc. 209 at 1–2). Accordingly, the Court will grant CDM's motion in limine as to the

arbitration with the nonparty subcontractor.

### E. The County's Attorney Fees

CDM seeks to exclude any reference to the County's attorney fees. (Doc. 183 at 7–8). The Court will reserve ruling on this issue and allow the parties to present further argument on it at the pretrial conference.

### F. CDM's Purported Contractual Obligation to Detect Errors in WSP's Deliverables

CDM seeks to prohibit Plaintiff from arguing to the jury that CDM's contract with the County required CDM to "detect material errors and omissions in WSP's deliverables." (Doc. 183 at 8–9). CDM asserts that this issue is for the judge rather than the jury because the "language of CDM's contract . . . is not reasonably susceptible to more than one interpretation" given the contract's definition of "deliverable." (*See id.*). In response, Plaintiff contends that a "plain and ordinary reading" of CDM's contract with the County "reflects that CDM agreed to recognize material errors and/or omissions in the drawings and specifications prepared by WSP and to identify those errors to [the] County to prevent a failure in the deliverables on the [p]roject." (Doc. 197 at 23–24). Because the contract's definition of "deliverable" is not a model of clarity and resolving this issue requires the Court to consider the interplay of different provisions in the contract, the Court will reserve ruling on the issue and allow the parties to present further argument on it at the pretrial conference.

### G. CDM's Purported Contractual Obligation to Act as a Neutral Judge of Plaintiff's Claims

CDM seeks to prohibit Plaintiff from arguing to the jury that CDM was required under its CEI contract to act as a "neutral" or "impartial" judge of Plaintiff's claims or of NOIs. (Doc. 183 at 10–12). To be clear, earlier in this action, when the Court ruled on CDM's *Daubert*[1] motion (Doc. 137), the Court held that one of Plaintiff's engineering experts could opine on "the purported expectation that a CEI act as an impartial honest broker on a project." (Doc. 204 at 9–10). And that ruling still stands. However, the instant dispute about referring to CDM as an impartial judge concerns contractual language requiring CDM to "judge" Plaintiff's performance under the construction contract. (*See* Doc. 197 at 25–27). Plaintiff maintains that CDM's contractual duty to judge its performance carried a "duty of impartiality." (*Id.* at 26). But that reading cannot be squared with the plain meaning of the contract's language. *See Corp. Creations Int'l, Inc. v. Marriott Int'l, Inc.*, 276 So. 3d 36, 38 (Fla. 4th DCA 2019) (applying the language of a contract "as written" when that language was "clear and unambiguous"). Accordingly, the Court will grant CDM's motion as to this issue.

### H. Prior Dispute Between Plaintiff and CDM's Predecessor

CDM seeks to exclude any reference to a prior dispute between Plaintiff

---

[1] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

9

and CDM's predecessor company related to a different bridge construction project, including any reference to the arbitration award associated with that dispute, which was entered in Plaintiff's favor against CDM. (Doc. 183 at 12–13; *see* Doc. 197-21). The Court will reserve ruling on the issue and allow the parties to present further argument on it at the pretrial conference.

## IV.   CONCLUSION

Accordingly, it is **ORDERED** that CDM's motion in limine (Doc. 183) is **GRANTED in part and DENIED in part**, and the Court **reserves ruling** in part.

**DONE** and **ORDERED** in Orlando, Florida, on July 10, 2024.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record

10